UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| SBMAT KHECHUMYAN,<br><br>                    Petitioner,<br>     v.<br><br>CAMMILLA WAMSLEY,<br><br>                    Respondents. | CASE NO. 2:25-cv-02111-DGE-BAT<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) |

Before the Court is a Petition for writ of habeas corpus. (Dkt. No. 1.) For the reasons discussed herein, Petitioner's writ of habeas corpus is DENIED.

**I      BACKGROUND**

**A. Procedural Background**

Petitioner asks for a writ of habeas corpus, challenging his detention at Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 1

on Fifth Amendment grounds. (Dkt. No. 1 at 15–16.)[1] On October 27, 2025, Petitioner filed his petition and a motion for a temporary restraining order. (Dkt. Nos. 1, 2.) The parties then requested—and the Court granted—to forgo the motion for a temporary restraining order in favor of expedited briefing on the petition. (Dkts. No. 9, 10.) The parties agreed Respondents' response would be due on October 31, 2025 and Petitioner's reply would be due on November 12, 2025. (Dkts. No. 9, 10.) Respondents filed a response on October 31, 2025. (Dkt. No. 11.) Petitioner did not file a reply.

B. Factual Background

Petitioner, an Armenian national, entered the United States through San Ysidro, Mexico on approximately March 25, 2015. (Dkt. No. 11-1 at 2.) Petitioner expressed fear of returning to Armenia and was paroled into the United States. (*Id*. at 3.) Petitioner filed a Form I-589 Application for Asylum and Withholding of Removal. (*Id*.) On September 30, 2020, an immigration judge in Los Angeles, California found Petitioner did not have credible fear and ordered his removal to Armenia. (*Id*. at 4.) Petitioner appealed to the Board of Immigration Appeals on October 26, 2020 and timely filed his appellate brief on April 22, 2022. (Dkt. No. 1 at 7; *id*. at 4.) The government did not file a response brief. (Dkt. No. 1 at 7.) Petitioner filed a motion to reopen and remand on October 11, 2024. (Dkt. No. 11-1 at 4.) Both the appeal and motion to reopen and remand are still pending as of October 31, 2025. (*Id*. at 4.)

On May 10, 2019, while Petitioner's application for asylum was pending, Petitioner was indicted on "several counts of Bank Fraud and Aggravated Identity Theft." (*Id*. at 3.) He

---

[1] While Petitioner's motion for a temporary restraining order arguably touches upon a claim for prolonged detention, that motion has been withdrawn. In addition, the actual petition makes only a Fifth Amendment inadequate medical care claim and thus this will be the only claim the Court considers.

1  remained in federal custody for ten months.  (*Id*.)  On July 12, 2022, he pleaded guilty to "one
2  count of Conspiracy to Commit Bank Fraud" and "one count of Aggravated Identity Theft."
3  (*Id*.)  He was detained for just over two years for these offenses before being released on October
4  11, 2024.  (*Id*.)
5    Upon Petitioner's release from Bureau of Prison custody, he was immediately taken into
6  Immigration & Customs Enforcement custody and detained at NWIPC.  (*Id*. at 4.)  Petitioner's
7  first medical visit was conducted in Armenian on October 11, 2024.  (Dkt. No. 1-1 at 34.)
8  Petitioner's medical records from that appointment note Petitioner had a history of seizures and
9  his most recent seizure was "a month ago," in approximately September 2024.  (*Id*.)  Only one
10 week later, however, on October 17, 2024, Petitioner had a medical visit where his language was
11 recorded as "English," it was noted that "[n]o interpreter was available during visit," and his last
12 recorded seizure was listed as January 2024.  (*Id*. at 22.)
13   On November 12, 2024, Petitioner had an incident he believes was a seizure.  (Dkt. No. 1
14 at 9.)  Petitioner asserts another inmate found him suffering from the seizure and "called for
15 emergency medical treatment," but "staff failed to respond for 30 minutes."  (*Id*.)  Petitioner
16 further asserts staff came without a wheelchair and had to take his wheelchair-bound bunk
17 mate's wheelchair, leaving the bunk mate unable to use the restroom until Petitioner returned.
18 (*Id*.)  Petitioner asserts, even after being taken to the health care provider, he had to wait 20
19 minutes and had his condition dismissed.  (*Id*.)  Petitioner filed a grievance form that day and,
20 three days later, staff determined it was "not a grievance."  (Dkt. No. 1-1 at 74.)  Medical records
21 from the incident report he came in for "dizziness which occurred less than 30 minutes ago,"
22 "wanted to check his [blood pressure] because he thought it could be high," and "[s]tate[d]
23 dizziness has resolved."  (Dkt. No. 1-1 at 19.)
24

Petitioner then refused his medication in the afternoon of November 12, 2024 and the morning of November 13, 2024, stating he did not trust the medical team after their treatment of him during his alleged seizure.  (Dkt. Nos. 1-1 at 63–70.)  Petitioner then saw medical staff on November 13, 2024 to discuss his medication refusal and he agreed to "take his seizure medication on Pill line."  (*Id*. at 15.)

Since that incident, Petitioner has seen the doctor at least once relating to his seizure condition.  On January 14, 2025, Petitioner saw a health care provider who reported he "speaks English fluently" and identified his last seizure as being January 2024.  (*Id*. at 5.)[2]  Petitioner also saw health care providers at other points throughout his detention at NWIPC for reasons not entirely related to his seizures: on October 12, 2024 for a blood draw (*id*. at 27); on December 1, 2024, for a refill of medications (*id*. at 11); and on December 13, 2024, where he made an appointment for "itchy and clogged" ears but refused to speak to his assigned health care provider (*id*. at 9).

## II  DISCUSSION

### A. Legal Framework

"In general, '[h]abeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of confinement.  A civil rights action, in contrast, is the proper method of challenging conditions of . . . confinement.'"  *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156, 1168 (D. Ari. 2020) (quoting *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991)) (internal citations omitted).

---

[2] NWIPC staff reports Petitioner also saw health care providers on January 10, 2025; January 11, 2015; April 4, 2025; April 10, 2025; June 7, 2025; June 11, 2025; June 21, 2025; July 9, 2025; July 16, 2025; July 30, 2025; September 9, 2025; October 10, 2025; and October 15, 2025.  (Dkt. No. 11-2 at 4–6.)  Petitioner was apparently uncooperative at many of these appointments.  (*Id*.)  NWIPC staff also reports Petitioner refused medications for two weeks in June 2025.  (*Id*. at 5.)

|   |   |
|---|---|
| 1 | While neither the Supreme Court nor the Ninth Circuit have decisively prohibited |
| 2 | conditions-of-confinement habeas claims, *see id.* at 1169–1170, it is extraordinarily rare for |
| 3 | courts in this circuit to permit conditions-focused habeas claims.  The primary exception where |
| 4 | Ninth Circuit courts permitted conditions-focused habeas claims was during the early stages of |
| 5 | the coronavirus pandemic.  *See Castillo v. Barr*, 449 F. Supp. 3d 915 (C.D. Cal. 2020) (granting |
| 6 | Petitioners release from custody); *Bent v. Barr*, 445 F. Supp. 3d 408, 417 (N.D. Cal. 2020) |
| 7 | (granting a conditional temporary restraining order for release due to the coronavirus); *Urdaneta* |
| 8 | *v. Keeton*, No. CV-20-00654-PHX-SPL (JFM), 2020 WL 2319980, at *6 (D. Ari. May 11, 2020) |
| 9 | (requiring each party "submit a proposed form of order" detailing how custody conditions can |
| 10 | become "constitutionally adequate").  And even on this issue Ninth Circuit courts were divided. |
| 11 | *See Ibarra-Perez v. Howard*, 468 F. Supp. 3d at 1168–1169 (finding a habeas petition is the |
| 12 | wrong vehicle to bring a coronavirus-related challenge to detention); *Carballo v. Barr*, 491 F. |
| 13 | Supp. 3d 860, 870 (D. Nev. 2020) (same).  Ninth Circuit courts have not explicitly held all other |
| 14 | conditions-of-confinement claims will be dismissed, *see Doe v. Bostock*, No. C24-0326-JLR- |
| 15 | SKV, 2024 WL 3291033, at *6 (W.D. Wash. Mar. 29, 2024) (considering but rejecting on the |
| 16 | merits Petitioner's claim), *report and recommendation adopted*, No. C24-0326JLR-SKV, 2024 |
| 17 | WL 2861675 (W.D. Wash. June 6, 2024), but Petitioner provides and the Court is aware of no |
| 18 | Ninth Circuit case law permitting such a claim. |
| 19 | **B. Analysis** |
| 20 | Here, Petitioner seeks to bring a challenge not to the fact of his detention, but to the |
| 21 | conditions of his confinement; namely, the health care he is being provided at NWIPC. |
| 22 | Petitioner's individual claim of a mismanaged seizure condition is distinct from the coronavirus |
| 23 | line of cases; Petitioner provides no explanation for why this claim is proper.  Instead, Petitioner |
| 24 |   |

ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 1) - 5

makes only the conclusory statement that "no remedy other than immediate release is sufficient to address the life-threatening harm that Petitioner continues to suffer." (Dkt. No. 1 at 15.) Accordingly, based on the circumstances presented the Court would dismiss the petition as being an improper vehicle with which to bring this claim.

Even assuming Petitioner's conditions-of-confinement claim is properly before the Court, the record does not support the claim. Fifth Amendment deliberate indifference claims require a petitioner to show:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries."

*Fraihat v. U.S Immigration and Customs Enforcement*, 16 F.4th 613, 636 (9th Cir. 2021) (quoting *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). The respondent must be more than negligent and instead be "objectively unreasonable" in a way that constitutes "something akin to reckless disregard." *Id*. (quoting *Gordon*, 888 F.3d at 1125; *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

Here, Petitioner fails to show objective unreasonableness or reckless disregard. Petitioner provides no failures by NWIPC or its staff in the last six months. Petitioner asserts "facility staff have numerous times failed to respond to his episodes in a timely manner" and that staff "fail to provide him his medications on time" (Dkt. No. 1 at 3), but details only one seizure over the past year, on November 12, 2024, where he was treated within one hour of the start of the incident. (*Id*. at 9.) While Petitioner takes issue with the medical care he received during this incident and the response to his grievance about the treatment, the health care provider appears to have confirmed their understanding of what occurred with Petitioner at the time of the

incident and Petitioner's grievance form was responded to promptly. (Dkt. No. 1-1 at 19, 74.) Petitioner also appears to have had no difficulty scheduling appointments or receiving medications and, while Armenian may be his native language, he does not contest that he can also communicate in Spanish, Russian, and English. Finally, Petitioner asserts inconsistencies with the date of his last seizure prior to being detained at NWIPC. (Dkt. No. 1 at 12.) In contrast, successful Fifth Amendment inadequate medical care claims involve significant documentation of "consistent failures to provide necessary medication and timely medical care" or widespread failures including only being given Tylenol when prescription medications were required, having eyeglasses confiscated for months, not having one's blood sugar taken as required, and not being given follow-up cancer screenings. *See Mercado v. Noem*, No. 25-cv-6568 (LAK), 2025 WL 2658779, at *8–9 (S.D.N.Y. Sept. 17, 2025); *Cesar v. Achim*, 542 F. Supp. 2d 897, 907 (E.D. Wis. 2007).

### III    ORDER

Accordingly, and having considered the petition for writ of habeas corpus (Dkt. No. 1) and the available briefing of the parties, the Court finds and ORDERS that Petitioner's writ of habeas corpus is DENIED.

Dated this 14th day of November, 2025.

David G. Estudillo
United States District Judge